The first case for argument this morning is 23-1495, CUP Computing v. Stewart. Mr. Learman, please proceed. Thank you, Your Honor, and may it please the Court, Dan Learman for Appellant, CUP Computing. The Board erred in construing two claim terms, Particular Limitations and the Security Agent Limitation. I'd like to start with the Particular Limitation. The patent requires a particular wake event that triggers a particular wake signal that in turn triggers a particular security service. In other words, there is an association between the wake event, the wake signal, and the security service. The system can respond one way to event A and another way to event B. That's different than the prior art when there is no association between the wake signal and the security service. Can you explain to me? I'm quite confused on what the difference is between your construction and the Board construction. So can you explain what you think the difference is? Sure, Your Honor. Yeah, the key difference is that in the Board's construction, the only thing that needs to matter is that there needs to be the signal or event needs to be identifiable. And so what the Board said was identifiable based on time. And it's important to look at the argument below. What does that mean? It's a practice that means you've got one, and therefore there's the second and there's the third, and it's with respect to one particular event. I think what the Board meant, and this is the Board's construction, I think what the Board meant was that a signal sent at time one is distinguishable from a signal sent at an event that is time two, and therefore that satisfies a particular limitation. In our view, that does not... Well, when you say it's different, can you just follow through? So you've got a particular event, and you go through first and it takes you to the second and the third. Right. And when you say you have another particular event, then the Board is saying you do another one? Right. Well, I think that's the key distinction, if I can just back up. Okay, good. In our system, under our construction, a particular event will dictate a particular signal, which will dictate a particular service. When you say, make a particular argument in response to a particular legal claim, you're saying, make a particular argument in response to that claim. Make a different argument in response to a different claim. The arguments might be distinguishable. The trouble with that analogy is that you've taken... An event is a different kind of thing from an argument. An argument is time independent and just exists in the abstract. An event is a happening. So the same... Anyway. I agree, Your Honor, but I think that is actually what led the Board astray. Let's talk about security service. Security service is one of the terms, as a signal. Those are less time dependent. The security services articulated in the specification are things like defragmenting the hard drive, running a virus or malware scan, updating the operating system, requiring a login. The Court saw event and saw the fact that events can be based on time. That's not like an earth-shattering concession. The spec says they can be based on time. But what the Board ignored was in the very next sentence that that event will only satisfy the claims if it then triggers a particular security awake event, service, sorry, signal, and then that in turn triggers a particular security service. So I think what Your Honor is getting at is that when you look at event in isolation, perhaps it can be distinguishable based on time and identifiable based on time. But first of all, there is a linkage. There is a daisy chain here. That event, whether it's time-based, and the spec also has non-time-based events like alerts and alarms, needs to then trigger a particular wake signal. And that will then automatically lead the security agent to perform a particular security service that is dictated by the event. The prior art does not have that. And what is your view? How is your view different? That is my view, Your Honor. The Board's view is A, there is no relationship between the event, the signal, and the security service. As long as the event is somehow identifiable in form, whether it's in time or whatever, that is enough. Full stop according to the Board. So I guess what I keep thinking about is causes of, the event can be a cause, so like a storm or a hurricane or a tornado or an earthquake or different kinds of causes. And then the signals can be a siren, an alarm, a flare. So the content of the signal can be different. The cause can be different. And then the resulting actions, the security services, can be different. And I take it that the Board's position is it doesn't matter that there are different causes as long as the triggers happen at different times. It doesn't matter if the content of the signal, whether it's a flare or anything, are different. It's a different particular signal because it was sent at a different time, right? I think that's part of it. The Board's position, I think, is just if it's identifiable, it satisfies a particular requirement. But the claims also require in response to. The claims expressly say that the wake signal must be in response to a particular wake event. It then says that the security agent, in response to the wake signal, will wake specific portions of the device and then perform particular security services. Event, signal, service, correct?  What is it about this patent that, in your view, if this is your view, I've struggled to understand, says that the event has to be different each time, the signal has to be different each time, and the service has to be different each time? Is that what you're saying particular means? And if so, how would we get there? Two answers. And the first answer, it's a yes and. Putting that aside, whether there needs to be multiple events and multiple signals and multiple services, there still needs to be the linkage. And in the prior arc, you wake up the whole device and then some other entity, it's a customer service agent or a backend server, will go in and then decide what to do. It is automatic in our device. There is an event and then automatically the security agent, based upon the event, does what it wants. Can the event be the same type of event each time, but just at different times? I think our patent contemplates multiple events because it says it can respond to any number of wake events. Does that, by multiple, do you mean it always has to be a different type of event? Well, it doesn't always have to be different. It could have the same event and a particular event will dictate a particular security service, but it contemplates there might be two events. And event B will dictate, necessarily, will dictate a different security service. If there's only one type of event, repeatedly done, are we within the scope of your claims or we're definitely outside the scope of your claims? I think we're definitely out, but I think even if your honor disagrees. Why are we definitely out? We're definitely out because it describes multiple security services. It uses the plural. It recites multiple security services. It enumerates different wake events. It enumerates alarms, incoming data, alerts, timestamps, time duration, and it says that it shall provide different security services, plural, in response to the different events. But even if you disagree, and I do believe the system has to be capable of responding differently to different events. Even if you disagree, even if there's one event and one signal and one service, and even if our patent allows for that, the board's construction is wrong and the prior art is distinguishable for this reason. The service still needs to be dictated by the event and the signal. In the prior art, the device is just woken up and then someone else comes in and says, I'm going to do this. I'm going to do that. I'm going to tell it what to do. I'm going to click on what we're going to call the security agent and tell it what to do. In our system, it's automatic. It's dominoes. It's a daisy chain. Even under your honors reading, the decision below is wrong and the prior art would not have rendered it obvious because it doesn't describe automatically performing a particular service in response to a particular event. Let me ask just one other thing. On the dispute about particular, which is where we've been focused, it seems like the board went on and applied what it understood to be your construction. I don't know what you have to say about that. Do we even need to resolve this dispute over the particular construction? Yes, for three reasons, your honor. First, the PTO has intervened here and on appeal, it does not dispute that we went under our construction. It does not defend that alternative holding by the board. All it says is that if the board is right, we win and it says that if we're wrong, we  Have you appealed from that alternative holding? We have appealed the entire decision below, your honor. I'm just saying that this court has held and courts have held that even appellees abandon arguments by failing to raise them. I think that applies for CRI when it's an intervener. But let me answer your question. The board did not apply our construction. As I said, the key aspect of our construction, and this is where the board went astray, is this linkage requirement. We expressly said linkage, and when we said the event could be time-based, we said it still needs to be associated with the particular signal and service. The board never even purported, in fact, it rejected that with respect to security service. It didn't address it with respect to the other two of the three factors, and it never found or purported to even ask whether there is an association between these. So the board didn't even ask that question or apply our construction, and the prior art is distinguishable. The prior art only describes one type of wake event, which is a signal, which is waking the whole device. Even if your honor thinks that that could satisfy our patent, it never says that that wake event then leads to or causes a particular security service. It just didn't say that. And that is the core aspect of our invention and the core distinction between the prior art. And that is what the agent does. If I could turn to that, it's a related point. Our agent acts automatically. It knows what to do in response to a particular event and a particular signal. This is the daisy chain. The prior art programs don't do anything automatically. There is a wake signal that wakes the device or a portion of the device, and then what happens is you have a customer service or a back-end service center, or maybe the user goes into what's called this storefront, and then tells the device that has been woken, run this program, run this program, run that program. That's not our device. Our device, even assuming if there's one event and one signal, the agent will automatically determine what to do based upon the event and the signal. And the board didn't apply that with respect to particular. It also didn't even purport, your honor, for the agent, which is a related concept. It didn't say that we lose even under our construction. So it didn't have the alternative holding with respect to agent. What the board said was two things. It rejected our notion that an agent needs to run continuously because it said we didn't argue that. We did. If you look at page 456 and 458 of the appendix, we expressly said that the agent must quote run continuously, and we distinguished the prior art agents on the ground that they were just clicked on and went back into a coma. The board also rejected our extrinsic evidence, Franklin, on the ground that it just defined our definition as just one type of agent. Well, again, that's flat wrong. Franklin recited our definition of agent and then said, quote, this is the essence of being an agent and that, quote, every agent has these properties. So the board's grounds for distinguishing our agent is at a minimum arbitrary and capricious because it literally just didn't read the next sentence. But it's also wrong because our definition of the agent requires a certain amount of  It automatically does something in response to the event or the signal. There's no dispute that the prior art agents don't do that. The prior art agents... And can you just quickly, because your time's running out, give us a citation to the spec in which you get that from, the autonomy point. Sure. Well, the spec, and let me turn to it. The spec repeatedly talks about the agent. I've got column 28. At column 28, it talks about waking one more component and performing computer services on one or more components. In the spec on page 23, it says, may be configured to trigger the wake signal. This gets to the relation to, but more importantly, the claims, say, in response to. It says on page 22, on column 22, in some embodiments, a security agent may wake only one or more components in order to execute security functions and selectively activate various components and perform the security functions. I don't think there's a dispute that in our patent, the agent knows what to do automatically. The only dispute is really whether the prior art does that, and it... Well, back up. Reverse that. There's no dispute that the prior art doesn't do that. I don't think the board disputed that our agent acts automatically. It just sort of applied a broader construction of agent that is just a computer program that you click on. That, I think, is the core distinction between the prior art. Because in the prior art, once the device is woken, a separate message will come in and say, run this virus scan or run that malware scan. That doesn't happen in our patent. In our patent, it is automatic. So I would like to reserve some time for rebuttal, but I would just like to make clear that the board did not apply our construction. So if the court agrees with our construction of either term, it should reverse the decision below. Thank you. Thanks. Good morning. Good morning, and may it please the court. Peter Sollard on behalf of the USPTO Acting Director. There are only three straightforward and routine issues before the court today, and Mr. Lerner has only talked about two of them. So I've just been saved some extra work. And I will laud Mr. Lerner that he's come into this court today and thrown a Hail Mary because none of what you just heard is actually in their brief, nor was it raised before the  It is an entirely distinct and new argument that has been waived. This is not the argument that is made in Kupp's brief or before the board on claim construction. So I would like to elaborate on what the claims say and what the difference is to guide the court in considering that. First of all, as to the particular claim limitations, there's a particular wake event, particular wake signal, particular security services. There's a causal link in the claims, as my colleague has said, between those elements. But the argument that was made before the board was that a security system needs to receive or be capable of recognizing different types of wake events and taking different actions, generating different wake signals in response to those different types of wake events. So the argument before the board and in the briefing is not about this daisy chain, the causal link. Okay, so I'm a little confused and maybe it's just me, but yeah, I get the word types and I don't understand what the distinction is between what the board did and this types, how adding types into the mix changes the way it's done. Right. Your Honor, I can explain that with perhaps a practical example. So we have a security administrator that's part of the claim and perhaps the security administrator might send a wake event and that wake event might be sending to the security system, update your antivirus definitions. And so the argument is, is that enough? If the prior art teaches that, and then there are the two additional steps in response to that. And what was argued before the board and in the briefing is you need more than a signal that just update your virus definitions. You also need a signal, run a new antivirus scan. Those are two different types of wake events. Update your definitions, run a scan. You have to have that in the prior art to have a teaching of our claim. And that's what Kupp has argued up until today. And what the board found is there's no such requirement in the words of my colleague, he talked about event A and event B. There's no requirement for event A and event B in the claim where A and B are different types of events. What the board found is if the prior art teaches, there's a signal and it says, update your antivirus definitions. And it sends that at noon today. And then there's a new virus that comes out. You know, there's an urgent need to protect against this new virus. The antivirus definitions get updated tomorrow morning. And now there's another signal at noon tomorrow. Update your antivirus definitions. Those are particular wake events because one's Tuesday and one's Wednesday. The existence of a new virus is extraneous to your point, right? It is. It's just a reason for there to be a new definition. Or it could be it sends it every day at noon. It could be. Exactly. The only real point I'm trying to make, I'm just trying to make a complete hypothetical that's irrelevant. If it sends the exact same signal that will cause the same sequence of actions, update your antivirus, and it does it at noon today and noon tomorrow, those are particular. That meets the plain and ordinary meaning of particular. And in that view, what role is being played in the claim by the word particular? That is, what would distinguish a claim with that word omitted each place? It just means in its plain and ordinary sense, it's somehow individually identifiable. And that's how the board construed it. I don't think I asked my question properly. It's commonly a reason to reject a claim construction that the claim construction would give the identical meaning to the claim, whether or not that word was there. How does your, this came up in the board's opinion. I guess I just want some elaboration on it. Right, your honor. What the board found is that particular is still doing work because the board. What work? Okay. So the board construed particular to mean distinguishable from other wake signals, for example. Or, you know, it would be obviously you change wake for the other terms. So it's distinguishable. So I'm wearing a particular tie today. If I show up at my next argument and I'm wearing a tie, you would not say that you don't know that this was a particular tie because it's still the new one is still a tie. They're the same type, but they are particular because one is polka dot and I wear stripes next time. Right. And the board found it has to be particular. You have to have some characteristic of identifying it as an individual thing in that category and that a timestamp is a good enough characteristic in the context of computer coding. In fact, it makes sense. How do you map the tie example with the earlier example you were just giving about update your virus software at noon every day? That is, are you saying the patentable weight to the word particular is you can't come back to the next argument with this tie under what the board agrees is the right construction? Yes. Well, then why can you satisfy the claims in your view by sending the same update your software, your virus software every day at noon? Because update your virus software is the tie. But is it the same tie every day? Noon today is polka dots and noon tomorrow is stripes. Why is that right as opposed to saying noon every day is the same, I will say, lovely blue tie that you're wearing today? Thank you. Because in the context of the specification, there's nothing that requires more than that. And the board found that's the plain and ordinary meaning. And fundamentally, I would say it's far more reasonable than the opposite. CUP wants you to read the word type, a word that's not there, into the claims, and it doesn't have anything in the specification to point to. It's not just that there's a limitation described in the spec that they want you to read into the limitations when you shouldn't. There isn't even anything in the spec suggesting that that should be something in the claim for the meaning of particular. I don't remember, did the particular language, the language that used that term in several different places, get added to claims that were originally lacking in it? Or were they part of these claims originally? And originally here could mean in this patent or in any of its numerous ancestors. I can't answer that question for you, Your Honor. I'm sorry. I don't know the history of the amendment of the claims. I can tell you that the word particular or a variant of it only occurs three times in the spec. And none of them in connection with these claim terms that are at issue, wake event, wake signal, security services. So there's just really, it's something that was thrown into the claims and there's nothing to support this far more limited understanding that you have to import the word type into the claims. And how does, just to clarify, help me, how does what he said today differ? I mean, you said he comes up here with an entirely different argument that is not consistent with the one you described about types. Yes. So I understand my colleague to be arguing is not so much about the type argument that we've just discussed, but about the causal link. That there has to be a link, that a wake event in turn causes the wake signal, which in turn causes the security services. That is in the claim language. And the board found that the prior art teaches that. We walked through the board's findings in great detail for Joseph as an example in the USPTO's brief. And there's been no dispute about that. And that's why I say this is an entirely new argument about what my colleague has called the daisy chain, the cause link between those three terms. That's entirely new. It's not in the briefs. It wasn't raised before the board. Have you waived the alternative argument that the board applied their construction of particular and it doesn't make a difference? I don't believe we waived it, Your Honor. I can say that we at least preserved it in the USPTO's brief at page 26. That was the only place that I was able to find on the fly without a word search of the  So in your view, do we have the option of not resolving the claim construction dispute? And if we were to agree with the board that in the alternative it doesn't make a difference, applying the patent owner's construction? I believe, Your Honor, it still has to be resolved because there are appeals from two IPRs that involve different claims. And I don't believe the alternative finding was made in the second IPR, which includes some non-overlapping claims. So I do believe the court has to resolve it, which is part of the reason the USPTO did not emphasize it in the briefing. Briefly I'll just also touch on construction of security agent. Same issue, same routine thing this court sees all time. CUP wants you to read the word autonomous in. They want it to be autonomous security agent instead of just security agent. No support for that in the spec, in the claim. There's nothing that says it acts independently according to its own agenda or anything like those words in the specification. Now in contrast to particular, security agent does appear many times in the spec, but it's only described in functional terms of what it does, and none of that functional description describes it as autonomous, making decisions based on the environment. Any piece of computer code is a logical thing. It's pre-written by a human being to respond to certain inputs and generate certain outputs. So any piece of code is going to take inputs and generate outputs. The fact that there's that level of description in the spec doesn't in any way make the code autonomous or acting according to its own agenda. I'll just say briefly, as I said, security agent appears many places or quite a few times in the spec, but primarily the main discussion is from the bottom of column 27 of APPX 133 to the top of column 29 of APPX 134. And there's also a reasonable amount of discussion in column 22 at APPX 130, but nothing about this autonomous issue. There's no definitional statement of just security agent, so again, the board reasonably said we don't have a definition in the spec, we're going to give it its plain and ordinary meaning. They looked at the dictionary definitions that were supplied by the petitioner and found them reasonable and adopted the one from Merriam-Webster. They rejected CUP's proposed definition, which is based on a highly specialized definition of autonomous security agent from a paper at Technical Proceedings. Quite clearly, the title of the article is about autonomous agent. If you read the whole thing, not the most exciting thing in the world, but I tell you it's all focused on we don't have consistency in the community about how we talk about an autonomous agent. What should it mean? They're not even saying it has this established meaning. They're trying to bring order to the chaos and propose a meaning. And so the board quite rightly rejected this single, very detailed, very distinct autonomous security agent definition in favor of the plain and ordinary meaning, and there's no dispute that the prior art teaches security agent under that plain and ordinary meaning. Thank you. Thank you. Three points, Your Honors. The first is on the Hail Mary, which I think might resolve the issue. Page 452 of the appendix, we say that the claim elements require a wake event that triggers a particular type of wake signal, which triggers the security for a particular security service. On page 465, we say there's no concept of Hall of preparing a particular wake signal in response to receiving a particular wake event. In our opening brief at 28, we say under the correct construction, a distinct wake event triggers a distinct wake signal and in turn triggers distinct security services to respond to the event. That's at page 28 of our opening brief. In a reply brief at page 6, when discussing their wake up call, we say that is particular because they influence the specific events that follow and have a particular cascade. On page 8, we say particular security services are particular not because they can be identified on time, but because the particular security services are performed, quote, in response to a particular signal and event. I think my friend conceded that if this is correct, if we made this argument, we win. My friend said that we didn't make this argument. We made it below. We made it in our opening brief. We made it in our reply brief. The board did not apply this construction. We're not running away. Can I just ask, you said he conceded that if he made that argument, or what did you  Maybe I'm misstating. I think his primary argument up here is that we're raising a new argument as a Hail Mary that was not made below. I don't think there's a dispute that the board never found this particular association. To the contrary, the board rejected it with respect to the security services. So I don't think there's a dispute that the board did that. On type, we're not running away from that, but we see it as related. Particular under their definition, we maintain that it is superfluous if it's just identifiable by time. Particular means specific. Generic means nonspecific. We're not reading, adding the term type. We are defining particular. When Chuck Berry says no particular place to go, he means no specific place to go. He's going somewhere, but it's not specific. When you say go to a particular house and perform a particular service, the house is distinguishable from other places on earth. Or maybe it's distinguishable in time, but you're performing a particular service at a particular house. So it is not superfluous. It is in the spec. The spec recites multiple wake signals, multiple wake events, and multiple security services. But the claims are the thing, and the claims do say particular. The spec confirms that, but the claims say particular. You don't read words out of the claims. I think that's not permitted. Finally, on the waiver point, just on the alternative holding, the page of the brief that my friend cited is just in their facts when they describe what the board did. This court has repeatedly said that you waive arguments by making them only in the facts and not in the argument. There is nothing in their argument that asks the court to affirm on any alternative ground. For those reasons, we would ask the board to reverse. We thank both sides. Thank you. Thank you.